## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANATH DESILVA,<br><br>    Plaintiff<br><br>    v.<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and the FINANCIAL SERVICES INSTITUTE, INC. LONG-TERM DISABILITY PLAN,<br><br>    Defendants | CIVIL ACTION NO. |

## <u>COMPLAINT</u>

## <u>INTRODUCTION</u>

1.  Plaintiff, Janath Desilva ("Mr. Desilva") brings this action against the Defendant, The Guardian Life Insurance Company of America ("Guardian") and the Financial Services Institute, Inc. Long-Term Disability Plan ("Plan") (collectively referred to as "Defendants"), for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq*. ("ERISA"). Mr. Desilva is a participant in an ERISA welfare benefit plan insured by Guardian and administered by Guardian.

2.  Mr. Desilva is filing this action to recover long-term disability ("LTD") benefits due to him under the Plan, to enforce the present rights existing under the Plan, and to clarify his rights under the terms of the Plan. Mr. Desilva also seeks to recover attorney's fees and costs pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g) and prejudgment interest pursuant to Massachusetts law.

3.    Mr. Desilva challenges the Defendants': 1) unreasonable and unlawful termination of Mr. Desilva's LTD benefits despite the substantial medical and vocational evidence demonstrating Mr. Desilva's qualification for said benefits; 2) repeated pattern of rejecting and failing to engage with the substantial evidence supporting Mr. Desilva's disability in an effort to limit Defendants' financial exposure for Mr. Desilva's claim; 3) failure to provide Mr. Desilva with a full and fair review of his claim for LTD benefits, including repeatedly ignoring information supporting Mr. Desilva's entitlement to benefits, as well as terminating his benefits without engaging with the evidence supporting his eligibility for benefits; 4) failure to employ reasonable standards for the evaluation of whether an individual is working and is receiving disability earnings; 5) failure to define relevant Plan terms, which failure is then utilized against Plan participants such as Mr. Desilva to justify the termination of benefits; and 6) failure to provide a reasonable claims procedure that would yield an impartial decision on the merits of Mr. Desilva's LTD claim.

## JURISDICATION AND VENUE

4.    Jurisdiction of the court is based upon ERISA, in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, consists of a group long-term disability insurance plan underwritten by Guardian, which includes Mr. Desilva.

5.    Additionally, this action may be brought before this court pursuant to 28 U.S.C. 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

6.    ERISA provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal

of benefit denials. Those avenues of appeal have been exhausted.

7.      Venue is proper in this district as Mr. Desilva participated in the employee benefit plan at issue within this district, many of the events and occurrences relevant to this matter occurred within this district, and the Defendants conduct business in this district.  29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391.

## PARTIES

8.      Mr. Desilva was a resident of Massachusetts when he became disabled and began receiving benefits from Defendants under the Plan. Mr. Desilva is a vested participant in Defendants' employee benefit plans, within the meaning of 29 U.S.C. § 1002(2)(7). Mr. Desilva has standing to bring this action under 29 U.S.C. § 1132(a).

9.      The defendant, Guardian, is a for-profit insurance company, with its principal place of business in New York, New York. Guardian transacts business in Massachusetts and insures the Plan under which Mr. Desilva is suing.

10.     At all times relevant to the claims asserted in this Complaint, Guardian purported to act as an ERISA claims fiduciary with respect to participants of the Plan generally, and more specifically with respect to Mr. Desilva, within the meaning of ERISA.

11.     The Plan under which Mr. Desilva is suing is an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. §1002(1).

## STATEMENT OF FACTS

**Relevant Plan Terms.**

12.     Mr. Desilva is eligible for LTD coverage under contract of insurance with Guardian.

13.     The Plan is administered by Guardian.

14.     The Plan contains a narrow definition of disability Mr. Desilva must meet to prove his

eligibility for benefits:

15.    **Disability or Disabled:**
These terms mean You meet either the occupation test or the earnings test shown below.

- **Occupation Test:** You meet this test if: (1) You are not working in any occupation; and (2) You have a current Sickness or Injury which causes impairment to such a degree that You are not able to perform, on a Full-Time basis, the major duties of Your Own Occupation.

You will not meet this test, if You are able to perform the major duties of Your Own Occupation with Reasonable Accommodation.

- **Earnings Test:** For any month in which You are working, You may meet this test, if: (1) You have a current Sickness or Injury which causes impairment; and (2) such impairment causes You to be unable to earn more than this Plan's maximum allowable Disability Earnings.

Neither loss of a professional or occupational license due to misconduct or unlawful activity or receipt of, or entitlement to, Social Security disability benefits in and of themselves constitute Disability under this Plan.

**Disability Earnings:** This term means the monthly income You earn from working while Disabled. It includes salaries, wages, commissions, bonuses and any other compensation earned or accrued while working including pension, profit sharing contributions, sick pay, paid time off, holiday and vacation pay. When You have an ownership interest in the business, Disability Earnings also includes business profits, attributable to You, whether received or not. It includes any income You earn while Disabled and return to the employer, partnership, or any other similar business arrangement to cover any business or overhead expenses. If You have the ability to work on a Part-Time or Full-Time basis, Disability Earnings also includes Maximum Capacity Earnings beginning with the earlier of the date You: (1) have been terminated from employment with the employer; (2) have been Disabled for 12 months in a row; or (3) have been offered a job or workplace modification by the employer and You do not return to work.

**Own Occupation:** This term means the occupation(s): (1) You are routinely performing immediately prior to Disability; (2) which is Your primary source of income prior to Disability; and (3) for which You are covered under this Plan. Occupation includes any employment, trade or profession that are related in terms of similar tasks, functions, skills, abilities, knowledge, training and experience required by employers from those engaged in a particular occupation in the general labor market in the national economy. Occupation is not specific to a certain employer or a certain location.

16.     The term "working" as it applies to "Disability Earnings" is not defined in the Plan.

17.     As a result of the functional limitations imposed by his illness, Mr. Desilva has met his burden of proving he meets the Plan definition of Disabled.

18.     As Mr. Desilva has met his burden of proving that he meets the Plan definition of disability, he is therefore eligible for LTD benefits under the terms of the Plan.

19.     Specifically, Mr. Desilva meets the Occupation Test of Disability, as he is not working in any occupation.

20.     There is no dispute that Mr. Desilva has a "sickness which causes impairment to such a degree that [he is] not able to perform, on a Full-Time basis, the major duties of Your Own Occupation."

21.     Neither the Plan nor Guardian has any administrative processes and safeguards (as those terms are used in 29 C.F.R. §2560.503-1) in place to ensure and to verify appropriately consistent decision making.

22.     The Plan does not confer discretion on Guardian to determine eligibility for benefits or to interpret the terms of the Plan.

23.     Any discretion that may be contained in the Plan was not delegated to Guardian.

24.     The judicial standard of review of this matter is de novo.

**Defendants' Conflict of Interest**

25.     Guardian's financial conflict of interest as the payor of Mr. Desilva's benefits infected its decision to terminate Mr. Desilva's LTD benefits, and its handling of Mr. Desilva's claim.

26.     Guardian's conflict of interest is exemplified, in part, by the following: 1) its retroactive decision that Mr. Desilva was working, after years of confirming that the fees earned from the business he owned did not constitute work activity; 2) its failure to define "working"

under the terms of the Plan; 3) its termination of Mr. Desilva's claim without conducting a vocational evaluation to determine if the fees earned from the business he owned constituted "working"; 4) its failure to conduct a reasonable investigation of Mr. Desilva's claim; 5) its deference to its own record reviewing claims representatives who, on information and belief, lacked the vocational expertise to render a decision on Mr. Desilva's claim; 6) its reliance upon assumptions rather than facts to uphold the termination of Mr. Desilva's claim; 7) its failure to address the vocational evaluation of Mr. Desilva's claim even though the basis of its termination was that Mr. Desilva was working and the standard of disability requires an assessment of whether Mr. Desilva is unable to perform the duties of his own occupation and is "working,"; and 8) its failure to conduct an independent review of all the evidence in the record, but rather to defer, entirely, upon the decisions of its unqualified internal claims representatives.

27.     Defendants failed to "conduct[] [themselves] as a true fiduciary attempting to fairly decide a claim, letting the chips fall as they may[]" in its review of Mr. Desilva's claim. *Lavery v. Restoration Hardware Long Term Disability Benefits Plan*, 937 F.3d 71, 79 (1st Cir. 2019).

**Mr. Desilva's illness and application for long-term disability benefits.**

28.     Mr. Desilva was an Executive Vice President of a financial services company at the time he became disabled. Mr. Desilva's occupation required regular travel, obtaining new business, and managing new and existing accounts.

29.     Mr. Desilva ceased working in 2016 due to a sickness, which impaired his ability to perform the duties of his own occupation.

30.     Mr. Desilva owns a business, which since his disability, is run by team members that are available to support all financial advisors and their firms. The day-to-day work of his

business is run by his office manager/assistant.

31.   Mr. Desilva has not taken on any new clients since the onset of his disability. His assistant

manages the investments for clients who existed prior to his date of disability, along with

support from a third-party financial group.

32.   As the owner of the business, Mr. Desilva collects fees and commissions from clients'

investments that predated the date of his disability. These fees and commissions are not

related to the performance of any work since the date Mr. Desilva became disabled.

33.   The Guardian was aware of the existence of Mr. Desilva's business when it approved his

claim for benefits.

**Defendants' review and termination of Mr. Desilva's claim.**

34.   Following the approval of his claim, the Guardian conducted regular reviews of Mr.

Desilva's ongoing eligibility for benefits.

35.   Defendants' reviews included obtaining Mr. Desilva's medical records and Attending

Physician's Statements confirming his ongoing disability from his treating physicians,

statements from Mr. Desilva, and reviews of his activities.

36.   In addition, Defendants reviewed Mr. Desilva's tax returns and activities, each time

determining that Mr. Desilva was not working.

37.   For example, on November 29, 2016, Guardian's "Financial Review" stated: "EE not

working PT, **receiving residual commission however this is not an offset in this policy."**

(Emphasis added).

38.   On November 29, 2016 Guardian's internal review concluded: "EE is working w/ The

Advocator Grp for SSDI. EE has his own business therefore able to RTW at his leisure

once he is feeling better. He will submit P&L's if/when he RTW part time. Rec to f/up with

EE Nuero (sic) after EE completes PT to see what his R&L are ATT."

39.    Guardian referred Mr. DeSilva to its agent, The Advocator Group, because it had

determined that Mr. DeSilva was not working and was therefore eligible for Social Security

Disability benefits.

40.    On December 13, 2016, Mr. DeSilva spoke with the Guardian regarding his application for

Social Security Disability benefits. The Guardian's notes from that call state:

> QUESTIONS ABOUT SSDI AND IF HE HAS TO APPLY, WOULD LIKE TO
> TRY AND RTW POSSIBLY PT FEB 2017 HOWEVER HE WILL FIND OUT
> WHAT THE DR SAYS AFTER HIS TESTS. **ADVISED SINCE EE HAS BEEN
> OOW SINCE APRIL WITH NOT ERTW DATE WE WOULD REQUEST
> THAT HE APPLY ATT.** EE COULD BE ELIGIBLE FOR CLOSED PD
> AMOUNT OF BENEFITS EVEN IF HE DECIDES TO RTW IN FEB. EE
> UNDERSTOOD ALSO ASKED ABOUT PTE. **ADVISED OF INABILITY TO
> EARN OVER 80 OR CLAIM WOULD BE CLOSED. ADVISED ONCE EE
> STARTS WORKING ALL INCOME IS CONSIDERED DISABILITY.
> (Emphasis added).**

41.    On March 1, 2017, the Guardian again spoke with Mr. DeSilva regarding his business. The

Guardian's notes from that call state:

> NUMBNESS. GOES TO PLATINUM PT FOR PHYSICAL THERAPY
> LOCATED IN HOPKINTON, MA. A**SKED IF EE HAS BEEN WORKING
> AND EE STATED NO NEW BUISNESS, JUST TAKING CARE OF SOME
> OF HIS EXISTING CUSTOMERS. WORK HAS BEEN PILING UP. EE
> ASKED WHAT WOULD HAPPEN IF HIS DR SIAD (sic) HE CAN RTW PT.
> WOULD WE TAKE INTO ACCOUNT ALL INCOME OR JUST NEW
> BUISNESS. ADVIESD EE IF HE HAS OFFICIALLY RTW PT THEN WE
> WOULD TAKE INTO ACCOUNT ALL BUINESS. EE UNDERSTOOD**. EE
> ASKED ABOUT WORK INCENTIVE. COULD NOT FIND WORDING IN
> BOOKLET RE: 12 OR 24 MONTHS AND ADVISED EE AFTER HE HEARS
> FROM HIS DR TO GET BACK TO US AND I WOULD LET HIM KNOW
> (CONFIRMED IN BOOKLET, WORK INCENTIVE IS FIRST 24 MONTHS).
> (Emphasis added).

42.    On April 3, 2017, the Guardian documented as a part of its internal review: "EE has his

own business therefore able to RTW [return to work] at his leisure once he is feeling better.

He will submit P&L's if/when he RTW part time."

43. On April 8, 2018, the Guardian noted that Mr. DeSilva was "earning quite a bit for going out on disability as of 4/2016. However unable to determine exactly therefore will wait until EE NOVE and request 2017 tax return as well."

44. Guardian's November 2018 review of Mr. DeSilva's tax returns note that it was "unable to decipher if this income is from new sales and/or commissions therefore no further action req'd."

45. Following a December 3, 2019 financial review, which noted that Mr. Desilva's income was "slowly declining," Guardian decided to conduct surveillance "near/around" Mr. Desilva's office and to "find out additional information about his business."

46. Surveillance did not yield any information that contradicted Mr. Desilva's statements regarding his activities made to the Guardian.

47. Guardian's review of Mr. DeSilva's 2019 tax return on January 19, 2021 concluded as follows:

RECV'D 2019 TAX RETURN/ EE EARNED 224/031 IN BUSINESS INCOME. EE IS NOT WORKING, HOWEVER HAS A BUSINESS AND PAYS OTHERS TO WORK FOR HIM.

48. On January 19, 2021, Guardian conducted another review of Mr. Desilva's claim and determined he was entitled to ongoing benefits.

49. On February 4, 2021, following a review of Mr. Desilva's social media pages, Guardian reiterated: "WE EXPLAINED THAT RESIDUAL INCOME WOULD NOT BE CONSIDERED AN OFFSET AS EE NOT EARNINGS AND THEREFORE CONSIDERED COMMISSION WHICH IS NOT AN OFFSET."

50. On February 8, 2021, the Guardian asked Mr. DeSilva again about his business:

ASKED EE IF HE WERE TO RECEIVE ANY NEW BUSINESS WOULD HE

THEN PASS IF ON TO HIS PARTNERS? AND EE SAID YES. EE ASKED ABOUT PTW AND IF THAT IS STILL POSSIBLE? ADVISED YES. DISCUSS WIN, ETC. EE UNDERSTOOD. HE SAID HE STILL HAS DIFFICULTY GETTING AROUND DURING THE DAY AND JUST ISINT SURE IF ITS POSSIBLE HOWEVER HE WILL CONT TO LET US KNOW.

51.    Despite the above-referenced reviews Guardian determined on February 25, 2021, in contradiction to the Plan terms, that Mr. DeSilva's "net profit would be considered earnings even though he continues to pay individual to handle his day to day business operations." Ultimately, the Guardian concluded that because Mr. DeSilva "indicated he materially participates in the operations of the business and deducted business expenses for auto, telephone, and internet which indicates business activity. Additionally, based upon the social media and internet searches (Facebook and Linked In) provided, they indicates (sic) the EE is active in the business."

52.    Guardian made this conclusion even though nothing had changed since Guardian's November 29, 2016 forensic financial review, which concluded: "EE not working PT, receiving residual commission however this is not an offset in this policy." In 2016, 2017, 2018, 2019, and 2020 – each year that Guardian reviewed Mr. DeSilva's tax returns, his accountant checked the box next to "materially participates" on his tax return.

53.    The Plan does not define "working" as "materially participating" in a business for tax purposes.

54.    On March 5, 2021, without notice, Guardian terminated Mr. Desilva's benefits. The original letter sent to Mr. Desilva terminating his benefits referred to a different claimant and included that individual's personal information.

55.    Guardian determined, contrary to years of reviews, that Mr. Desilva was working and owed the company overpaid benefits it had paid him in the amount of $142,283.28.

56.     Guardian's decision was based on the same occupational and financial information in the company's possession since the onset of Mr. Desilva's claim.

57.     Guardian also determined that Mr. Desilva did not suffer from a sickness that impacted his ability to perform the duties of his own occupation, based on a review conducted by a Guardian Registered Nurse Case Manager, Jeanne D.

58.     Guardian did not request that a physician conduct a review of Mr. Desilva's file before terminating his benefits.

59.     Guardian's March 5, 2021 letter noted that "Guardian has not relied upon any internal rule, guideline or protocol in relation to the review and determination of your claim for benefits."

**Mr. Desilva's Appeal and Guardian's Response.**

60.     On March 15, 2021, counsel for Mr. Desilva requested a copy of Mr. Desilva's complete claim file from the Defendants, including all internal guidelines relating to the administration of Mr. Desilva's claim.

61.     Defendants failed to respond to Mr. Desilva's request within thirty days as required by ERISA.

62.     On August 27, 2021, Mr. Desvila appealed Guardian's decision to terminate his benefits.

63.     On October 21, 2021, in response to Mr. Desilva's appeal, Guardian wrote Mr. Desilva referring to a different claimant and referring to medical information concerning a different individual. This was the second time information regarding a different claimant was sent to Mr. Desilva,

64.     Mr. Desvila requested on several occasions an explanation as to Guardian's interpretation and application of the definition of disability, including without limitation, how earnings and/or income is evaluated and how Guardian determines if an individual's business

earnings represents disability earnings. Mr. Desilva also requested any internal guidelines as to how Guardian determines that an individual has a "material" involvement in a business such that the earnings of that business constitute income for purposes of determining an individual's monthly benefits.

65.     The Guardian claimed that it did not have internal guidelines responsive to Mr. Desilva's requests.

66.     The Guardian did not respond to Mr. Desilva's requests for guidance regarding the interpretation of its Plan provisions.

67.     On March 15, 2022, Mr. Desilva underwent a Functional Capacity Evaluation that confirmed his disability under the terms of the Plan.

68.     Mr. Desilva supplemented his appeal with updated medical records and the results of the Functional Capacity Evaluation.

69.     Mr. Desilva also provided Guardian with a letter from his accountant confirming that the tax software he used in the preparation of his tax returns automatically defaults to "yes" in response to the question "Did you materially participate in the operation of this business during the tax year" as Mr. Desilva's business showed a profit. The accountant further noted that whether the answer was yes or no has no impact on tax liability.

70.     Mr. Desilva's 2022 tax return checked "no" in response to the question "Did you materially participate in the operation of this business during the tax year?"

71.     Mr. Desilva also submitted sworn affidavits confirming that he was "not currently working, nor[has he] worked since the beginning of my disability."

72.     On April 11, 2023, Guardian asked Mr. Desilva several financial questions, which revealed its lack of understanding of Mr. Desilva's business.

73. On May 19, 2023, Guardian disclosed a financial review it conducted of Mr. Desilva's claim, which appeared to be missing information. Despite requests for this information on May 29, 2023, June 11, 2023, and June 14, 2023, Guardian failed to thoroughly respond to Mr. Desilva's requests.

74. The financial review did not determine whether Mr. Desilva was working or if his business's earnings were "disability earnings" as defined by the Plan.

75. On June 23, 2023, Guardian confirmed that the Plan "does not define the term "working"" for purposes of determining what constitutes "disability earnings" nor does it define the term "Actively Working." Nevertheless, Guardian indicated that it determined Mr. Desilva was "working," based on his ownership of his business and his material involvement in his business. This decision was made by the claims representative handling Mr. Desilva's claim.

76. On August 5, 2023, Mr. Desilva responded to Guardian's financial review with an independent expert vocational review, which determined that Mr. Desilva was not working under any accepted definition of the term.

77. The Guardian did not review this expert report, which concluded that Mr. Desilva's business ownership did not meet any definition of "working" under any vocational definition of the term, as it "did not provide any information to contradict the current findings of the CPA review, or our financial determination."

78. On August 18, 2023, Defendants terminated Mr. Desilva's claim, determining that while "Mr. Desilva would not likely have the ability to function on a full-time basis with any amount of exertion," "benefits should never been approved as Mr. Desilva was earning more than the maximum allowable amount under the Plan as of April 18, 2016." As a

result, Guardian determined that his claim was overpaid from July 18, 2016, the date benefits began, through February 17, 2021, but it had "determined not to pursue reimbursement of this overpayment."

79.   The Guardian's review of Mr. Desilva's claim failed to consider the evidence supporting his claims that he was not working and that the fees earned by his business were not "disability earnings."

80.   As Judge Richard Stearns of the United States District Court for the District of Massachusetts, noted in *Martin v. Polaroid Corporation Long Term Disability Plan,*

> While it is true ... that a claimant bears the burden of proving disability, ... the claims process is not an adversarial one, but a collaborative effort on the part of the claimant and the plan administrator, the ultimate goal of which is not to trick a claimant out of benefits that he deserves because of a failure on his part to square every corner, but to achieve a result that is fair to both the claimant and the Plan.

*Martin v. Polaroid Corporation Long Term Disability Plan*, 2004 WL 1305661 At * (May 27, 2004).

81.   Defendants' review of Mr. Desilva's claim was adversarial in nature.

**Summary of Defendants' Review of Mr. Desilva 's Claim.**

82.   Mr. Desilva has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

83.   Mr. Desilva's disability and eligibility for LTD benefits is based on the substantial evidence in Defendants' possession.

84.   Mr. Desilva's condition had not changed, nor had it improved, at the time Defendants terminated his claim for benefits.

85.    Since the date of onset of his disability, Mr. Desilva has been and remains unable to perform the material and substantial duties of his regular occupation due to his impairments.

86.    Mr. Desilva has not worked since the onset of his disability.

87.    The only reliable evidence in the record supports the conclusion that Mr. Desilva is not working.

88.    Because Mr. Desilva meets the Plan definition of Disability, Mr. Desilva is entitled to the reinstatement his benefits with payment of all benefits in arrears with 12% interest, along with continuation of payments so long as he meets the Policy's definition of "disabled."

89.    The Defendants failed to have Mr. Desilva's claim assessed by a vocational expert with the appropriate credentials to evaluate his eligibility for benefits as required by ERISA's implementing regulations.

90.    The Defendants failed to address or evaluate the vocational conclusions of Mr. Desilva's expert regarding Mr. Desilva's activities.

91.    The Defendants repeatedly and unreasonably dismissed Mr. Desilva's statements regarding his activities.

92.    The Defendants failed to conduct a reasonable vocational review of Mr. Desilva's ability to perform the duties of his own occupation, as required by the terms of the Plan.

93.    The only evaluators to question Mr. Desilva's veracity were Defendants' file reviewers, none of whom: have vocational expertise; understood the nuances of Mr. Desilva's business; contacted the vocational expert; or spoke to Mr. Desilva or his office manager.

94.    Defendants' unquestioned reliance upon the opinions of unqualified claims examiners to determine that Mr. Desilva was working under a non-existent definition of the relevant

terms, who lacked experience with his business or vocational standards, relied upon false information, and failed to consider all the evidence in the record, was unreasonable, particularly in light of the independent vocational evaluation supporting Mr. Desilva's disability. The only conclusion to be drawn is that Defendants' decision was arbitrary and capricious and wrong.

95.   By refusing to engage with information Defendants acknowledged was thorough and required to complete its review, *i.e.*, evidence Mr. Desilva's vocational evidence, Defendants proved that their financial conflict of interest impacted their decision to terminate Mr. Desilva's benefits and was unreasonable. *See Petrone v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated Cos.*, 935 F.Supp. 2d 278, 293 (D.Mass. 2013) (an "administrator cannot simply ignore contrary evidence, or engage with only that evidence which supports his conclusion.").

96.   The Defendants failed to meet the minimum requirements for the termination of Mr. Desilva's LTD benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

97.   Defendants failed to meet the notice requirements required by ERISA's implementing regulations. In particular, Defendants' adverse determination letters failed to articulate the basis for the decision to deny benefits, failed to contain a full discussion of why Mr. Desilva's claim was denied, and failed to detail the standard behind the decision.

98.   The Defendants failed to meet the Plan's requirements for review of claims that have been terminated.

99.   The Defendants failed to provide Mr. Desilva with a full and fair review of his claim for LTD benefits.

100.   The Defendants failed to respond to Mr. Desilva's attempts to engage in a meaningful dialogue regarding the evaluation of his claim for LTD benefits.

101.   The Defendants routinely ignored communications from Mr. Desilva regarding his claim for LTD benefits.

102.   The Defendants relied on information it was aware was false in terminating Mr. Desilva's benefits.

103.   The Defendants failed to engage with the objective evidence supporting Mr. Desilva's disability.

104.   Any discretion to which Defendants may claim they entitled under the terms of the Plan is negated by its failure to provide Mr. Desilva with an explanation as to its adverse action as proscribed by ERISA and its implementing regulations.

105.   Any discretion to which Defendants may claim they entitled under the terms of the Plan is negated by its failure to provide Mr. Desilva with a full and fair review of his claim.

106.   The Defendants failed to disclose all the internal guidance available to claims representatives in evaluating Mr. Desilva's claims despite Mr. Desilva's request for this information, and despite ERISA's implementing regulations' requirement to disclose this information.

107. The decision to terminate Mr. Desilva's LTD benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan, and contrary to law.

108. The Defendants were influenced by their financial conflict of interest when they terminated Mr. Desilva's LTD benefits and failed to provide him with the full and fair review of his claim required by law.

109. Due to the unlawful termination of benefits under ERISA, Mr. Desilva has lost his rightful LTD benefits. He has also suffered emotional and financial distress as a result of the Defendants' actions.

110. As a result of the denial of his claim for LTD benefits, Mr. Desilva has lost the use of his LTD benefits.

111. Mr. Desilva is entitled to restitution for the loss of his benefits at the Massachusetts statutory 12% interest rate.

## FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan
### Action for STD and LTD Benefits)
### (ALL DEFENDANTS)

112. Mr. Desilva realleges each of the paragraphs above as if fully set forth herein.

113. The Plan is a contract.

114. Mr. Desilva has performed all his obligations under the contract.

115. 29 U.S.C. § 1132(a) states that:

(a) A civil action may be brought ---

1.    by a participant or beneficiary –

A.  for the relief provided for in subsection (c) of this section, or

B.  to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

116. The Defendants' actions constitute an unlawful denial of disability benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

117. The Defendants unlawfully denied Mr. Desilva's LTD benefits in part by: (1) dismissing without explanation, the substantial evidence supporting Mr. Desilva's claim for LTD benefits; and (2) denying Mr. Desilva a full and fair review of their decision to deny his claim for benefits.

118. In accordance with 29 U.S.C. §1132, Mr. Desilva is entitled to LTD benefits under the terms of the Plan until he is no longer disabled or reaches 67 years of age, as promised under the Plan.

119. The Defendants have refused to provide Mr. Desilva with his disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which require that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the participants of the Plan.

120. As a direct and proximate result of this breach, Mr. Desilva has lost the principal and the use of his rightful disability benefits.

**SECOND CAUSE OF ACTION**
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

121. Mr. Desilva realleges each of the paragraphs above as if fully set forth herein.

122.   Under the standards applicable to ERISA, Mr. Desilva deserves to recover "a reasonable
       attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29
       U.S.C. § 1132(g).

123.   Defendants have the ability to satisfy the award.

124.   Mr. Desilva's conduct of this action is in the interests of all participants who subscribe to
       the Plan, and the relief granted hereunder will benefit all such participants.

125.   Mr. Desilva's conduct of this action is in the interests of individuals participating in ERISA
       plans where the plan administrators have violated ERISA's implementing regulations for
       their own financial benefit.

126.   Mr. Desilva's conduct of this action is in the interests of all individuals participating in
       ERISA plans whose claims were denied or terminated.

127.   Mr. Desilva's conduct of this action is in the interests of all individuals who lack the
       financial ability to pursue their claims for benefits as a result of the denial of their disability
       benefits.

128.   The Defendants have acted in bad faith in denying Mr. Desilva's disability benefits under
       the Plan.

129.   The award of attorneys' fees against the Defendants will deter others acting under similar
       circumstances.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1)   Declare, adjudge, and decree that Mr. Desilva is entitled to LTD benefits as
      calculated under the terms of the Plan;

(2)    Award Mr. Desilva disability benefits and 12% interest from the dates of the Defendants' breach of contract;

(3)    Declare, adjudge, and decree Mr. Desilva was entitled to LTD benefits to which he is entitled as a disabled individual under the terms of the Plan;

(4)    Order that the Defendants make restitution to Mr. Desilva in the amount of all losses sustained by Mr. Desilva as a result of the wrongful conduct alleged herein, together with 12% prejudgment interest;

(5)    Award Mr. Desilva the costs of this action and reasonable attorneys' fees; and

(6)    Award such other relief as the court deems just and reasonable.


Date:  October 31, 2023          Respectfully submitted for the Plaintiff,


By:    /s/ Mala M. Rafik
Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK, P.C.
184 High Street, Suite 503
Boston, MA 02110
T: 617-604-1160
F: 617-227-2843
E: mmr@rosenfeld.com