# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JANATH DESILVA,<br><br>    *Plaintiff,*<br><br>  v.<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA,<br><br>    *Defendant.* | Case No. 23-cv-12625-MRG |

## MEMORANDUM & ORDER REGARDING REPORT & RECCOMENDATION [ECF No. 48] ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT [ECF No 25]; [ECF No. 30]

**GUZMAN, D.J.**

## I.    INTRODUCTION

This is an ERISA case.[1]  A serious car accident in April 2016 and complications from resulting surgeries left Plaintiff Janath DeSilva disabled.  At the time of the accident, Plaintiff was an independent financial advisor and sole owner of his business, which was affiliated with non-party Boston Partners Financial Group.  He was also a participant in an employee welfare benefit plan ("the Plan") administered by Defendant, The Guardian Life Insurance Company of America. In October of 2016, Plaintiff filed an application for long-term disability ("LTD") benefits under the Plan, reporting that he had been unable to work since the time of the accident.  His claim was

---

[1] "ERISA" refers to the Employee Retirement Income Security Act of 1974, a federal statute. As a general matter, ERISA "obligates private employers offering pension plans to adhere to an array of rules designed to ensure plan solvency and protect plan participants."  Advocate Health Care Network v. Stapleton, 581 U.S. 468, 472 (2017) (citations omitted).

approved in December of 2016.  He continued to receive LTD benefits under the Plan for the next four years.  However, in February of 2021, Defendant notified Plaintiff that it was closing his claim following a determination that he could work in his own occupation.  Defendant also informed Plaintiff that it considered certain of Plaintiff's income that he earned since 2016 to be disability earnings that should have counted against -- and therefore reduced – Plaintiff's monthly disability benefit under the Plan.  Plaintiff pursued an internal appeal and lost.  He then filed this lawsuit.

Before the Court are the parties' cross motions for summary judgment.  [ECF No. 25]; [ECF No. 30].  The undersigned referred these motions to U.S. Magistrate Judge Hennessy for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1).  Judge Hennessy issued a twenty-nine-page R&R that recommended granting Defendant's motion and denying Plaintiff's motion.  [ECF No. 48 at 29].  After the R&R issued, Plaintiff filed five timely objections.  [ECF No. 51].

After careful review of complaint [ECF No. 1], the administrative record [ECF No. 29], the original motions (and accompanying opposition briefing) [ECF No. 25]; [ECF No. 30], the R&R [ECF No. 48], as well as Plaintiff's R&R objections [ECF No. 51] and Defendant's reply [ECF No. 52], the Court hereby **OVERRULES** each of the objections and **ADOPTS** Judge Hennessy's recommendation in full for the reasons set forth below.  Accordingly, Defendant's summary judgment motion [ECF No. 25] is **GRANTED** and Plaintiff's cross motion for summary judgment [ECF No. 30] is **DENIED**.

## II.  BACKGROUND

### a.  Abbreviated Factual Summary[2]

#### i.  Plaintiff and the Plan

In April 2016, Plaintiff was an independent financial advisor and the sole owner of his business, which was affiliated with Boston Partners Financial Group.  [ECF No. 48 at 2 (citation omitted)].  Plaintiff was a participant in an employee welfare benefit plan ("the Plan"), which was administered by Defendant.  [Id. at 1–2].

The Plan provided two "tests" for determining whether a participant in the Plan was disabled for purposes of long-term disability ("LTD") benefits coverage: the Occupation Test and the Earnings Test.  [Id. at 3].  If a participant satisfied *either* of these two tests, then they were considered disabled for purposes of coverage.  [Id.]

**Occupation Test**: You meet this test if: (1) You are not working in any occupation; and (2) You have a current Sickness or Injury which causes impairment to such a

---

[2] As noted *infra*, U.S. District Judges must review the *unobjected to* portions of U.S. Magistrate Judges' reports and recommendations for clear error.  See, e.g., Grinder v. Gammon, 73 F.3d 793, 795 (8th Cir. 1996); Wilds v. UPS, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.") (citation omitted).

After careful review, the Court finds no clear error in the R&R's unobjected to factual findings and hereby adopts them.  See, e.g., Latin Am. Music Co. v. Media Power Grp., Inc., No. 07-2254(ADC), 2011 U.S. Dist. LEXIS 34824, at *2–3 (D.P.R. Mar. 29, 2011) ("Inasmuch as neither party has made a specific objection to the Magistrate-Judge's recitation of the factual background, the court hereby adopts the same.").

For context, the Court will provide an *abbreviated* summary of the R&R's unobjected to factual findings here and will address the specific, objected to portions of the R&R's factual findings *infra* -- each of which will be subject to *de novo* review.  See, e.g., United States v. B & D Vending, Inc., 398 F.3d 728, 732–33 (6th Cir. 2004) ("By conducting a *de novo* review of the portions of the magistrate judge's final R&R to which objections were filed, the district court subjected the magistrate judge's proposed factual findings and recommendation to meaningful review and complied     with     the     requirements     of     [U.S.C.]     §636(b).").

degree that You are not able to perform on a Full-Time basis, the major duties of Your Own Occupation.

You will not meet this test, if You are able to perform the major duties of Your Own Occupation with Reasonable Accommodation.

**Earnings Test**: For any month in which You are working, You may meet this test, if: (1) You have a current Sickness or Injury which causes impairment; and (2) such impairment causes You to be unable to earn more than this Plan's maximum allowable Disability Earnings.

[Id. (citation omitted)].

Further, the Plan defined the "Disability Earnings and Maximum Allowable Disability Earnings" a claimant could earn while still being entitled to LTD benefits as follows:

**Disability Earnings**: This term means the monthly income You earn from working while Disabled. It includes salaries, wages, commissions, bonuses and any other compensation earned or accrued while working including pension, profit sharing contributions, sick pay, paid time off, holiday and vacation pay. When You have an ownership interest in the business, Disability Earnings also includes business profits, attributable to You, whether received or not. It includes any income You earn while Disabled and return to the employer, partnership, or any other similar business arrangement to cover any business or overhead expenses. If You have the ability to work on a Part-Time or Full-Time basis, Disability Earnings also includes Maximum Capacity Earnings beginning with the earlier of the date You: (1) have been terminated from employment with the employer; (2) have been Disabled for 12 months in a row; or (3) have been offered a job or workplace modification by the employer and You do not return to work.

[Id. at 3 (citation omitted)].

And, as Judge Hennessy further explained,

The Plan "limits the amount of income [a participant] may earn, or may be able to earn, and still be considered Disabled." If a participant's Disability Earnings exceed "80% of [the participant's] indexed Insured Earnings," payments from the Plan will end. Insured earnings are defined as "[o]nly Your earnings from the employer." For sole proprietors and LLC members, insured earnings are calculated as the sum of: "(1) Your average monthly net profit as determined from Schedule C—Part II of You Federal Income Tax Return(s), Form 1040 for the prior calendar year [and] (2) Your average monthly contribution during the prior two calendar years deposited into a: (a) cash or deferred compensation plan, or salary reduction

4

plan, qualified under IRC section 401(k), 403(b), 457 or similar plan; and (b) elective employee pretax deferrals to a Section 125 plan or flexible spending account."

[Id. at 4 (citation omitted)].

### ii. Plaintiff's Injury & LTD Benefits Claim

On April 19, 2016, Plaintiff was involved in a car accident. [Id. at 1]. This accident and complications from related surgeries resulted in a persistent back injury. [Id.] Plaintiff filed a claim for LTD benefits under the Plan on October 11, 2016, reporting that he had been unable to work since the date of the accident. [Id. at 2 (citation omitted)].

### iii. Defendant's Initial Review of the Claim and Ongoing Oversight

On December 13, 2016, Defendant informed Plaintiff that the claim was approved. [Id. (citation omitted)]. Over the course of the next four years, Defendant regularly requested financial and medical information from Plaintiff, including tax returns. [Id. (citation omitted)]. During that period, Defendant continued to approve Plaintiff's claim upon review of the requested information. [Id. (citation omitted)].

### iv. Defendant's Termination of the Claim

On March 5, 2021, Defendant informed Plaintiff that they were closing his claim since it had determined that Plaintiff could work in his own occupation. [Id. (citation omitted)]. In the same breath, Defendant notified Plaintiff that because it found certain of Plaintiff's post-2016 earnings to be "disability earnings" that should have counted against his monthly LTD benefit payment, it had overpaid Plaintiff and accordingly requested a reimbursement of those alleged overpayments. [Id. (citations omitted)].[3]

---

[3] As Judge Hennessy pointed out, Defendant is no longer seeking reimbursement of the alleged overpayment. [Id. at 11, n.8 (citation omitted)].

5

### v.  **Plaintiff's Appeal and Defendant's Final Decision**

Plaintiff disagreed with Defendant's claim denial and timely filed an internal appeal.  [Id. at 2 (citation omitted)].  On appeal, Defendant concluded that Plaintiff had remained physically disabled such that he was unable to work full time in his own occupation, but also found that "benefits should have never been approved as [Plaintiff] was earning more than the maximum allowable amount under the Plan" at all relevant times.  [Id. at 2–3 (citations omitted)].

The undersigned agrees with Judge Hennessy that the only issue presented in Plaintiff's appeal -- and the only issue before the Court now -- is whether Plaintiff was "working" for purposes of the Plan since he became disabled, such that he is not entitled to LTD benefits under the Plan.  [Id.]  Indeed, Plaintiff agrees that if he was "working" for purposes of the Plan, the commission and investment fees that his business has earned since his disability would constitute "Disability Earnings" that would have rendered him ineligible for benefits under the Plan.  [Id. at 2, n.3 (citation omitted)].

### b.  **Procedural History**

Plaintiff's Complaint alleged the following causes of action against Defendant and former Defendant Financial Services Institute, Inc.[4]:

| Count # | Cause of Action[5] |
|---|---|
| I | Enforcement of Terms of Plan;  Action for STD and LTD Benefits |
| II | Attorneys' Fees and Costs |

Following discovery, the undersigned set a dispositive motion deadline, [ECF No. 24], and

---

[4] The parties later filed a dismissal stipulation, whereby all claims against former Defendant Financial Services Institute, Inc. were dropped.  [ECF No. 9].

[5] This chart contains Plaintiff's descriptions of his claims.  [ECF No. 1 at 18–21].

the parties timely filed cross motions for summary judgment. [ECF No. 25; ECF No. 30]. The undersigned then referred the case to Judge Hennessy for rulings on those motions. [ECF No. 44]. Judge Hennessy later issued an R&R recommending that this Court grant Defendant's motion and deny Plaintiff's motion. [ECF No. 48 at 29]. After the R&R issued, Plaintiff filed five timely objections. [ECF No. 51]. Defendant then filed a reply to these objections. [ECF No. 52].

## III.  LEGAL STANDARDS

### a.  This Court's Review of U.S. Magistrate Judges' R&Rs

A U.S. District Judge may refer certain types of pending matters to a U.S. Magistrate Judge for an R&R. 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). Parties may file written objections to an R&R within fourteen days of its issuance. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2). Objections containing arguments that were not raised before the U.S. Magistrate Judge, or arguments that refer to previously available evidence, are deemed waived. See Guzman-Ruiz v. Hernandez-Colon, 406 F.3d 31, 36 (1st Cir. 2005); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) (explaining that a party objecting to a report and recommendation is "not entitled to a *de novo* review of an argument never raised" before the magistrate). If a party lodges a proper objection, the U.S. District Judge must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). That said, R&R objections are not an appropriate vehicle to rehash or relitigate the points considered and resolved by the U.S. Magistrate Judge. See, e.g., Arnsten v. Washington, No. C24-5511-BHS, 2024 U.S. Dist. LEXIS 181214, at *4 (W.D. Wash. Oct. 3, 2024) (citations omitted).[6] When conducting a *de novo* review,

---

[6] Indeed, the clear error standard applies to such improper objections. See, e.g., Miller v. Hamlett, No. 19-CV-11097 (GBD), 2022 U.S. Dist. LEXIS 95013, at *5 (S.D.N.Y. May 26, 2022) ("The clear error standard also applies if a party's 'objections are improper'—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate

the U.S. District Judge may "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

### b.  <u>Summary Judgment in the ERISA Context</u>

In the context of ERISA, summary judgment motions "are nothing more than vehicles for teeing up ERISA cases for decision on the administrative record."  <u>Ministeri v. Reliance Standard Life Ins. Co.</u>, 42 F.4th 14, 21 (1st Cir. 2022) (citation omitted).  A consequence of this rule is that "the burdens and presumptions normally attendant to summary judgment practice do not apply."  <u>Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc. (I)</u>, 813 F.3d 420, 425 n.2 (1st Cir. 2016) (citation omitted).  When an ERISA claim is based on a denial of benefits, a threshold question for the reviewing court is whether the benefits plan at issue gives the plan administrator "discretionary authority" to determine eligibility for benefits.  <u>Leahy v. Raytheon Co.</u>, 315 F.3d 11, 15 (1st Cir. 2002).  If it does, then the reviewing court must apply an "arbitrary and capricious" standard of review.  <u>See, e.g.</u>, <u>Recupero v. New Eng. Tel. & Tel. Co.</u>, 118 F.3d 820, 824 (1st Cir. 1997) ("The court initially noted the appropriate standard of review, stating that the arbitrary and capricious standard applies where the benefit plan vests the fiduciary with the discretionary authority to determine benefits eligibility and to construe plan provisions.").

If, however, the benefits plan at issue *does not* grant the plan administrator discretionary authority, then the reviewing court must apply a *de novo* lens.[7]  <u>Ministeri</u>, 42 F.4th at 21 (citation omitted).  Importantly, the purported grant of discretionary decisionmaking authority "must be

---

judge'")(citations omitted)).

[7] To avoid confusion with the *de novo* lens that this Court must apply to the objected to portions of Judge Hennessy's R&R with the *de novo* standard that applies in the above-described ERISA context, the Court will henceforth use the terms "ERISA *de novo*" and "R&R *de novo*."

couched in terms that *unambiguously* indicate that the claims administrator has discretion to construe the terms of the plan and determine whether benefits are due in particular instances." Stephanie C. (I), 813 F.3d at 428 (emphasis added).  When this ERISA *de novo* standard applies, the court "may weigh the facts, resolve conflicts in the evidence, and draw reasonable inferences." Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc. (II), 852 F.3d 105, 111 (1st Cir. 2017).

## IV.  **APPLICATION**

### a.  **Threshold Question: Did the Plan grant the administrator discretionary authority to determine eligibility for benefits?**

As discussed *supra*, a reviewing court must first decide whether a benefits plan clearly grants the plan administrator discretionary authority to determine benefits eligibility, since the answer to this question determines whether the court must apply ERISA *de novo* review or an arbitrary and capricious standard to its review of the claim denial decision.  Although Judge Hennessy's determination that the Plan did *not* clearly grant discretionary decisionmaking authority to the Plan's administrator, [ECF No. 48 at 13–14], is *not* the subject of a pending objection, the undersigned will briefly address the issue here given its significance.

Defendant argues that the following language from the Plan constitutes a clear grant of discretionary authority:

> [Defendant] as part of our routine operations, apply the terms of this Plan for making decisions, including making determinations regarding eligibility, receipt of benefits and claims, or explaining our administrative policies, procedures, and processes. All such determinations are conclusive and binding, except that they may be modified or reversed by a court or regulatory agency with the appropriate jurisdiction.

[Id. at 13 (citations omitted)].

9

After careful review, the undersigned concludes that this cited provision *does not* constitute a clear grant of discretionary decisionmaking authority.  Although it is true that no "precise words" in the Plan are required, <u>Gross v. Sun Life Assurance Co. of Can.</u>, 734 F.3d 1, 15–16 (1st Cir. 2013) ("[w]e reiterate that no precise words are required"), granting language must be clear and unambiguous in this Circuit.  <u>See, e.g.</u>, <u>Stephanie C. (I)</u>, 813 F.3d at 428.  Here, the cited Plan provision's wording is analogous to the language at issue in <u>Stephanie C.(I)</u>,[8] in which the First Circuit found that the cited wording was "not sufficiently clear to give notice to either a plan participant or covered beneficiary that the claims administrator enjoys discretion in interpreting and applying plan provisions."  <u>See</u> 813 F.3d at 428.  Accordingly, the undersigned has concluded that an ERISA *de novo* review should apply to Plaintiff's denial of benefits challenge.

b. **Objection #1**

Plaintiff's first objection contains several sub-parts.  First, (1) Plaintiff argues that Judge Hennessy erred by concluding that the definition of the term "working" as used in the Plan was not ambiguous, and that, (2) further, the R&R's reliance on a dictionary definition of "working" over other, allegedly more appropriate definitions was contrary to the evidence and First Circuit precedent.  [ECF No. 51 at 1].  Finally, (3) Plaintiff objects to the R&R's alleged failure to "reconcile" its definition of "working" with Defendant's alleged "interpretation" of Plaintiff's conduct during the first several years of Plaintiff's claim.  [<u>Id.</u> at 9–11].  Defendant for its part, disagrees and urges this Court to reach a similar conclusion as Judge Hennessy.  [ECF No. 52 at 1–5].

---

[8] In <u>Stephanie C. (I)</u>, the plan language at issue stated that the defendant claims administrator "decides which health care services and supplies that you receive (or you are planning to receive) are medically necessary and appropriate for coverage."  813 F.3d at 428.

### i. <u>Was the Objection Properly Raised?</u>

Objection #1 was properly raised.  The arguments that form its basis were sufficiently raised before Judge Hennessy, [<u>see, e.g.</u>, ECF No. 32 at 19–20], and the objection was timely and sufficiently articulated in Plaintiff's R&R objections filing.  [ECF No. 51 at 6, 8–11].

### ii. <u>Potential Ambiguity and the Plan's Definition of the Term "Working"</u>

It is common ground that the Plan did not define the term "working."  [ECF No. 48 at 10].  Judge Hennessy first determined that the term was not ambiguous, [<u>id.</u> at 15], and then, rejecting both parties' proposed definitions, looked to dictionaries and ultimately concluded that "working" for purposes of the Plan meant "*engaged in activity regularly for wages or salary*."  [<u>Id.</u> at 14–16 (emphasis added)].  Plaintiff argues that Judge Hennessy should have used the definitions and vocational standards allegedly employed by the U.S. Social Security Administration ("SSA"), U.S. Internal Revenue Service ("IRS"), and U.S. Department of Labor ("DOL"), all of which were cited and referenced in his vocational expert's (Ms. Rhonda Jellenik's) report in this case.  [ECF No. 51 at 8–9].[9]

Applying the R&R *de novo* lens, this Court will first identify the appropriate legal standards.  An ERISA-regulated employee benefit plan must be interpreted under principles of federal common law.  <u>Filiatrault v. Converse Tech., Inc.</u>, 275 F.3d 131, 135 (1st Cir. 2001).  As the First Circuit has explained, "federal common law embodies *commonsense principles of contract interpretation*. Thus, straightforward language in an ERISA-regulated plan should be accorded its plain, ordinary, and natural meaning."  <u>Id.</u> (citation omitted and emphasis added).  In

---

[9] Just for example, the vocational expert's report cited a DOL definition of "*work*" as meaning "the performance of services for which renumeration is payable."  [ECF No. 29-5 at 49].

accord with this approach, courts interpreting contract terms in the ERISA context, "*may refer to*
*dictionaries* to help elucidate the common understanding of terms, although dictionary definitions
are not controlling." Martinez v. Sun Life Assurance Co., 948 F.3d 62, 69 (1st Cir. 2020)
(emphasis added). Moreover, just because a term is undefined does not mean that it is ambiguous.
Id. at 69 ("ERISA contract language is ambiguous only 'if the terms are inconsistent on their face'
or 'allow reasonable but differing interpretations of their meaning.'").

Here, both parties proposed varying definitions of the term "working." As mentioned
*supra*, Plaintiff (continues to) urge the application of alleged definitions used by certain
government agencies as well as the definition used by Plaintiff's vocational expert, [see ECF No.
29-5 at 43–51], whereas Defendant asked Judge Hennessy to define the term as "working in any
capacity." [ECF No. 48 at 14]. First, the Court finds that the term is not ambiguous, as Plaintiff
suggests. There is nothing "inconsistent on its face" about the term, nor does it allow for
"reasonable but differing interpretations" of its meaning. See Martinez, 948 F.3d at 69.

Further, this Court's review of dictionary definitions helps to elucidate, or make clear, the
term's plain, ordinary and natural meaning.[10] While of course none of these dictionary definitions
are controlling, see, e.g., Ministeri, 42 F.4th at 22, they certainly help make clear that the term

---

[10]See, e.g., *Working*, Oxford English Dictionary, https://www.oed.com/dictionary/working_n?
tab=meaning_and_use#13839939 (last visited March 25, 2025) (including a definition stating,
"The action of work *v[erb]*."); *Work*, Oxford English Dictionary, https://www.oed.com/dictionary/
work_v?tab=meaning_and_use#13826884 (last visited March 25, 2025) (including a definition
stating, "To act, do, function, operate"); *Work*, Merriam-Webster Dictionary,
https://www.merriam-webster.com/dictionary/work (last visited March 25, 2025) (including a
definition stating, "to perform work or fulfill duties regularly for wages or salary"); *Regular*,
Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/regular, (last visited
March 25, 2025) (including a definition stating, "recurring, attending, or functioning at fixed,
uniform, or normal intervals").

"working" should be given a meaning exactly matching or very closely akin to "*engaging in activity regularly for wages or salary*."  In other words, Judge Hennessy applied the correct legal standard, rightly determined that the term was not ambiguous, and then surveyed various reliable dictionaries and crafted a definition that did justice to the term's plain, ordinary and natural meaning.  Upon R&R *de novo* review, the (1) ambiguity and (2) definitional aspects of Plaintiff's Objection #1 are therefore **OVERRULED**.

### iii.  **Plaintiff's Estoppel Argument**

The third element of Plaintiff's Objection #1 is essentially that Defendant, with its actions and inactions during the first several years of his claim, "interpreted" the term "working" in a way that reasonably led Plaintiff to believe that he was not working for purposes of the Plan.  [See ECF No. 51 at 9 ("For five years, [Defendant] interpreted the evidence of [Plaintiff's] activities and earnings as it related to his business and concluded that he was not working.")].  This Court construes this argument to be, in essence, one of estoppel.  It does so because Plaintiff's argument is essentially that since Defendant repeatedly chose to approve his claim for several years despite allegedly knowing materially the same information about his activities -- Defendant should therefore be "stuck" with its prior alleged "interpretation."  [See id. at 10 (arguing that, during this five-year period, Defendant had "continually probed [Plaintiff's] 'word' that he was not working, conducting surveillance, internet searches, interviews with [Plaintiff], financial reviews, and engaging a [vocational rehabilitation specialist] to investigate")].

Applying the R&R *de novo* lens, the Court finds Plaintiff's argument unavailing for two independently sufficient reasons.  First, Plaintiff's Complaint did not allege an ERISA estoppel claim -- a separate cause of action -- so he cannot manufacture one now at the summary judgment stage.  [See ECF No. 1]; Util. Workers, Local 369 v. NSTAR Elec. & Gas Corp., 317 F. Supp. 2d

69, 72 (D. Mass. 2004) (explaining that "[a]n ERISA estoppel claim arises under the federal common law and is considered a form of 'appropriate equitable relief' that is available under Section 1132(a)(3) of ERISA").[11]  Moreover, as Judge Hennessy acknowledged in the R&R, [ECF No. 48 at 5–6], Defendant had long been "skeptical" of Plaintiff's representations and eventually referred his claim to its special investigations unit and forensic accountants for further inquiry. Indeed, it seems that Defendant was thorough in its investigation before ultimately denying Plaintiff's claim, but that this thoroughness took time.  As Defendant noted, it was:

> Only when [Defendant] compiled the entire Administrative Record, including [Plaintiff's] February 20, 2022, affidavit, tax forms, the review by Nawrocki and Smith and Judy Bogdanovich's calculation of earnings, that [Defendant] had the necessary information with which to determine that [Plaintiff] was in fact working and exceeded the Maximum Allowable Disability Earnings under the Plan.

[ECF No. 52 at 5].  Therefore, the Court rejects Plaintiff's estoppel argument, for both procedural and substantive reasons.

The Court's second reason for rejecting this argument is because more fundamentally, courts interpreting ERISA disputes must enforce plans *as written*.  See, e.g., Belknap v. Partners Healthcare Sys., 588 F. Supp. 3d 161, 176 (D. Mass. 2022) ("[T]his Court does not have the power to simply rewrite the [ERISA] Plan, or to create new statutory requirements.").  Accordingly, this Court will not credit Plaintiff's estoppel argument because it is untimely.  Moreover, this Court lacks the authority to rewrite the terms of the Plan, and it must enforce the Plan according to its written terms.  For the foregoing reasons, the third and final aspect of Objection #1 is **__OVERRULED__**.

---

[11] The Court further notes that an ERISA estoppel claim, *even if* one had been timely alleged, would have faced an uphill battle since they generally are not allowed unless the challenged plan terms are ambiguous.  See, e.g., Livick v. Gillette Co., 524 F.3d 24, 31 (1st Cir. 2008) (explaining that the courts that do allow for such claims "do so only when the plan terms are ambiguous").

c. **Objection #2**

Plaintiff's second objection is that he met his burden of showing that he was *not* working, under any definition of the term. Defendant disagrees and asks this Court to find that Plaintiff failed to carry his burden. [ECF No. 52 at 5–8].

### i. **Was the Objection Properly Raised?**

Objection #2 was properly raised. The arguments that form its basis were sufficiently raised before Judge Hennessy, [see, e.g., ECF No. 32 at 11-14] and the objection was timely and sufficiently articulated in Plaintiff's R&R objections filing. [ECF No. 51 at 11–13].

### ii. **Plaintiff Did Not Carry His Burden to Show He Was Not Working**

All agree that Plaintiff bears the burden of showing that he was *not* working for purposes of the Plan. When, as here, the ERISA *de novo* lens is applied, the Court must "independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden . . . ." Richards v. Hewlett-Packard Corp., 592 F.3d 232, 239 (1st Cir. 2010). Indeed, reviewing courts must "stand in the shoes of the administrator to 'determine . . . whether the administrative decision was correct.'" Id. (citations omitted). In service of his argument that he met his burden, Plaintiff, in his R&R objection, directs the Court's attention to two particular expert reports contained in the administrative record. [ECF No. 51 at 11–13]. The Court will apply the ERISA *de novo* analytical lens to its review of each expert report before turning to the remainder of the administrative record. The Court will then render its independent conclusion as to whether Plaintiff met his burden.

First, Plaintiff argues that, even when "working" is defined as "engaging in activity regularly for wages or salary" (i.e., Judge Hennessy's definition), he was not working under the

terms of the policy.  Specifically, he places heavy emphasis on his vocational expert's report, particularly Ms. Jellenik's conclusion that:

> The income is a result of his past work which pre-dated the disability, not his present work. The income is not a result of services performed and is not a result of his current physical or cognitive activities. The income is generated based on the work provided by [Plaintiff's assistant and sole employee] Ms. Sicard and the support services he pays for to help his business run.

[ECF No. 29-5 at 51].

However, a careful review of this expert report reveals several findings that weigh in favor of a finding that Plaintiff *was* working under this Court's operative definition, provided *supra*. Among other things, Ms. Jellenik found the following facts in her report, dated August 3, 2023:

- "[Plaintiff] continues to own the business." [Id. at 46];

- "[Plaintiff's] only employee is his assistant, Janice Sicard.  She was hired in 2016.  Ms. Sicard handles the day-to-day work required by the business . . ." [Id. at 47].

- "[Plaintiff] tries to stop in the office once every couple of weeks to check in and speak with his assistant to see if the office is running smoothly, to answer any questions and to pick up any mail."  [Id. at 46].

- "…On a rare basis, communication is completed with the pre-existing customers." [Id.]

- "…On a rare basis, [Plaintiff] may help his assistant with an issue she cannot handle."  [Id.]

- "[Plaintiff] [h]as not taken on any new clients.  He is not actively seeking new clients or new business.  Any increased revenue is generated by the actions of his existing clients and stock market." [Id. at 47].

- "[Plaintiff] will receive a commission from [certain] deposit[s] and a trail based on annuity assets under management.  New fees and/or commissions may be generated for his pre-existing clients…" [Id. at 47–48].

This Court finds that these, and the other relevant facts contained in Ms. Jellenik's report, support a finding that Plaintiff was working for purposes of the Plan.  They suggest that Plaintiff

had an active hand in the running of his business.  To the extent that the report attempts to draw a distinction between old and new clients, the undersigned finds it irrelevant to the inquiry. Servicing an existing client base can absolutely constitute "working," as it is a false premise to suggest that new client acquisition is somehow a necessary element.  Moreover, the fact that Plaintiff would come to the office "every couple of weeks" meets any definition of "regularly" as embedded within the Court's operative definition of working.   Perhaps most importantly, Plaintiff's "communication" with clients regarding the very nature of the services that they were purchasing from him is yet another factor that weighs in favor of a finding that Plaintiff was working for purposes of the Plan.  The Court reasonably infers that this "communication" was not idle chatter but was likely often substantive investment advice.  For all of these reasons, the Court finds that the *factual findings* contained in Ms. Jellenik's report supports the conclusion that Plaintiff has not met his burden.

Second, Plaintiff directs the Court's attention to an expert report written by Defendant's expert, Ms. Judy Bogdanovich, CPA.  [ECF No. 51 at 13].[12]  Defendant retained Ms. Bogdanovich to complete a financial review of Plaintiff in March 2023.  [ECF No. 48 at 8].  As part of this review, Ms. Bogdanovich reviewed Plaintiff's 2015-2021 tax returns and W-2 and 1099-MISC forms for 2017-2019, Form 1099-R for 2017, the statement of the claim, Plaintiff's physician's statements from August 2016, his attorney's appeal letter from February 2023, a financial review referral form completed by Defendant, and email communications concerning the appeal.  [ECF

---

[12] In the subheading at the beginning of this argument, Plaintiff referred to "the IRS definition of working" as also being supportive of his argument, [ECF No. 51 at 13], but he then appears to have never developed that argument in that section of his Objection #2 argument.  Accordingly, it is deemed waived.  Williams v. Roden, No. 09-10237-JLT, 2010 U.S. Dist. LEXIS 57454, at *27 (D. Mass. Apr. 6, 2010) ("Arguments not briefed are deemed waived" (citations omitted)).

No. 29-4 at 410]. Ms. Bogdanovich concluded, in part, that Plaintiff's "tax returns report continued income from the Schedule C and a decreased level of W-2 income. *The tax returns alone cannot confirm if [] [Plaintiff] is working . . .* " [Id. at 413 (emphasis added)].

Further, Ms. Bogdanovich recommended that Defendant request the following additional pieces of information "[i]n order to understand the type of income received," : "quarterly or annual commission/fee statements from Royal Alliance Associates, Inc. and Boston Partners Financial Group, LLC" as well as "year-end payroll from Boston Partners Financial Group to understand the type of wage received and if it is residual income." [Id.] As Judge Hennessy correctly observed, Plaintiff later provided some of this requested information but claimed to not have access to other portions of it. [ECF No. 48 at 8]. Considering the newly provided information, Ms. Bogdanovich issued a second report in April 2023, concluding in relevant part that "the tax returns alone cannot confirm if [] [Plaintiff] is working. The attorney continues to state that [] [Plaintiff] is not working, and that the assistant is performing the work." [ECF No. 29-4 at 617]. Ms. Bogdanovich was quick to point out that these and her other conclusions rested upon an incomplete factual record, stating on the same "Conclusions" page that, "[t]he breakdown by income type has not been provided…Commission reports were not provided to support that all clients existed prior to [] [Plaintiff's] date of disability…" [Id.]

Plaintiff's attempt to paint Ms. Bogdanovich's reports as wholly supportive of his position that he was not working is unavailing. Most fundamentally, Ms. Bogdanovich's reports expressly and repeatedly provide that its conclusions and findings rest on an incomplete picture of the facts. In light of this, Ms. Bogdanovich's report only reinforces Defendant's skepticism regarding the claim and desire to investigate further. On the other hand, Plaintiff's failure to present additional evidence leaves his proposed inference without a solid framework. As a result, Ms. Bogdanovich's

expert reports, standing alone, fail to create any momentum in advancing Plaintiff's case of help him carry his burden of showing that he was not working.

After applying the ERISA *de novo* lens to the remainder of the administrative record, the Court concludes that Plaintiff did not carry his burden of showing that he was not working. As Judge Hennessy observed, it is undisputed that:

> [Plaintiff] owned a business, leased spaced, employed an assistant, paid a provider to maintain his business-related social media accounts which published information for his clients, received and reviewed mail, and regularly went to his office to speak with his assistant and ensure that his business was running smoothly…He hired Sicard, kept her on as an employee, and approved a salary increase for her. When Sicard reported to [Plaintiff] her intention to retire, it became incumbent on [Plaintiff] to determine whether and how to replace her. [Plaintiff] also had to authorize payment of increased expenses for services for his business.

[ECF No. 48 at 18].

These undisputed facts point strongly towards a finding that Plaintiff did not carry his burden. But there's more. Certain of Plaintiff's tax returns show both that he was still taking in significant income in the years following the accident *and* that he was routinely deducting *business expenses*. For context, and as Judge Hennessy observed,

> To begin, in 2015, the last full tax year before the accident, DeSilva reported a total income of $433,661. In the years following the accident, DeSilva reported a total income of $259,648 in 2016, $286,773 in 2017, $200,375 in 2018, $230,459 in 2019, $224,008 in 2020, and $325,066 in 2021.

[ECF No. 48 at 20 (citations omitted)].

Although it is true that his post-accident, reported income is less than the pre-accident income reported in 2015, the types of sums Plaintiff earned during 2016-2021 certainly lead to a reasonable inference that he was working under the Court's operative definition, provided *supra*. This inference is even more reasonable when considering that Plaintiff paid approximately $20,000

in *self-employment* taxes each year. [Id. (citations omitted)]. Indeed, this is a further suggestion that Plaintiff was working.

In terms of business expenses, Plaintiff's tax returns show deductions for multiple categories. [See, e.g., ECF No. 29-4 at 382–83 (Plaintiff's 2020 tax return showing "business" expenses as, among other things, "[c]ar and truck expenses," "[l]egal and professional services," "[o]ffice expense," "[v]ehicles, machinery, and equipment," "[s]ecreterial," and "[a]ssociation [d]ues, licensces & [unreadable]")]. Although not dispositive, this array of business expenses further cuts against Plaintiff's argument that he carried his burden.

As it must, this Court has independently weighed the facts and opinions in the administrative record, see Richards, 592 F.3d at 239, and it has concluded that Plaintiff did not carry his burden of showing that he was not working. Accordingly, Objection #2 is **OVERRULED**.

### d. Objection #3

Plaintiff's third objection is that the R&R made erroneous factual conclusions and evidentiary inferences that were outside the scope of the administrative record to support its legal recommendations. [ECF No. 51 at 2]. Specifically, Objection #3, which runs for over five pages, [id. at 14–19], has two sub-elements: (1) that the R&R erred by rejecting the alleged findings in the expert opinions, and that (2) the R&R's conclusion that Plaintiff has been working was unsupported by the administrative record. Defendant disagrees and argues that the R&R appropriately weighed the administrative record and drew common sense and reasonable inferences from it. [ECF No. 52 at 8–11].

i.  <u>**Was the Objection Properly Raised?**</u>

Objection #3 is flawed in its presentation.  This is so because both of its sub-elements are effectively attempts to relitigate or rehash some of the very same arguments that were embedded within prior Objections.  For example, the Court has already addressed Plaintiff's contention that "the R&R's rejection of the expert opinions was clearly erroneous."  [ECF No. 51 at 14].  Secondly, the Court has already meaningfully engaged with Plaintiff's argument that Judge Hennessy erred in concluding from the administrative record that he had been working.  [<u>Id.</u> at 14].  Although the Court will not overrule Objection #3 on the grounds that it is invalid and will still apply the R&R *de novo* lens, it will only briefly address the redundant arguments presented.

ii.  <u>**Judge Hennessy Did Not "Reject[]" the Expert Reports**</u>

Plaintiff's contention that Judge Hennessy "reject[ed]" the expert reports contained in the administrative record is incorrect.  In fact, Judge Hennessy carefully reviewed the expert reports and repeatedly cited to them -- and *credited* their factual findings throughout the R&R.  [<u>See, e.g.,</u> ECF No. 48 at 10, 18–19 (citing to Ms. Jellenik's report), <u>id.</u> at 8 (describing Ms. Bogdanovich's report)].  What Plaintiff really means, then, is that Judge Hennessy erred by *adopting certain conclusions* reached in those reports.

First of all, as described *supra,* the undersigned has a duty to conduct an ERISA *de novo* review of the administrative record to determine whether Plaintiff met his burden of showing that he was not working.  In other words, this Court is not and has not deferred to Judge Hennessy's determination on this issue, so this sub-element of Objection #3 fails on that basis.  Secondly, however, the undersigned has already carefully reviewed and discussed the expert reports *supra* and has independently reached the same decision as Judge Hennessy: the expert reports' factual

findings, on balance, point towards the conclusion that Plaintiff did not carry his burden of showing that he was not working. Accordingly, the first sub-element of Objection #3 is **OVERRULED**.

### iii. <u>On Balance, the Administrative Record Reveals that Plaintiff Was Working</u>

In the second sub-element of Objection #3, Plaintiff asserts that Judge Hennessy's conclusion that Mr. DeSilva was working for purposes of the Plan is unsupported by the record. [ECF No. 51 at 14]. Specifically, Plaintiff argues that neither his ownership of the business and his interactions with it, nor his tax returns, support a finding that he was working. [<u>Id.</u> at 14–19]. This Court has already applied the ERISA *de novo* lens and carefully surveyed the administrative record on these specific issues *supra*, and it will not repeat itself. In short, this Court has determined that, on balance, Plaintiff has not carried his burden of showing that he was not working under the operative definition of that term, defined *supra*. Accordingly, the second sub-element of Objection #3 is **OVERRULED**.

### e. <u>Objection #4</u>

Plaintiff's fourth objection is that Defendant's "failure" to define the term "working" was prejudicial. [ECF No. 51 at 19]. Although Plaintiff did not say as much in its R&R objections, the Court notes that Plaintiff's summary judgment briefing argued that by failing to define the term, Defendant violated ERISA's requirement that plan provisions be "applied consistently with respect to similarly situated claimants." <u>See</u> 29 C.F.R. § 2560.503–1(b)(5); [ECF No. 32 at 19]. Defendant disagrees and argues that not defining the term was not prejudicial and that Plaintiff has not alleged that Defendant applied the term differently to other claimants. [ECF No. 52 at 11–12].

22

###### i.  **Was the Objection Properly Raised?**

Objection #4 was properly raised.  The arguments that form its basis were sufficiently raised before Judge Hennessy, [see, e.g., ECF No. 32 at 19–20], and the objection was timely and sufficiently articulated in Plaintiff's R&R objections filing.  [ECF No. 51 at 19].

###### ii.  **Not Defining "Working" Was Not Prejudicial**

Defendant was not legally obligated to define the term "working."  See, e.g., Martinez, 948 F.3d at 71 (reasoning in the ERISA context that "[w]here the only contested word in the phrase -- 'compulsory' -- has a plain and unambiguous meaning, *we cannot find the provision ambiguous simply because it is capitalized but undefined*" (emphasis added)); Des Armo v. Kohler Co. Pension Plan, No. 13-C-436, 2014 U.S. Dist. LEXIS 108243, at *41 (E.D. Wis. Aug. 5, 2014) (explaining that a defendant-ERISA plan administrator was "*not required to explicitly define every term* or explain the interpretive process that generated the reason for its denial . . . " (citation omitted and emphasis added)).  Moreover, as explained in great detail *supra*, this Court has concluded that "working" is not ambiguous and that its plain, ordinary, and natural meaning in this context exactly matches or is very closely akin to, "*engaging in activity regularly for wages or salary*."  So, to the extent that Plaintiff argues that the terms alleged ambiguity rendered it prejudicial, that argument is rejected.

To the extent that Plaintiff alleges that the failure to define the term violated 29 C.F.R. § 2560.503–1(b)(5), that argument is also rejected for a simple reason:  Plaintiff never alleged that Defendant applied the term "working" differently to other claimants.  Indeed, this section of ERISA regulations provides that:

> The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently *with respect to similarly situated claimants.*

29 C.F.R. § 2560.503–1(b)(5) (emphasis added).

Nothing in the Court's review of the record suggests that Plaintiff timely alleged that Defendant treated a single similarly situated claimant differently based on its application of the term "working."  Thus, Plaintiff's argument that Defendant acted prejudicially in this way does not get off the ground.  Accordingly, Objection #4 is hereby **OVERRULED.**

### f.    Objection #5

Plaintiff's fifth and final objection is that Defendant's alleged financial conflict of interest[13] should be a relevant factor in the Court's legal analysis and that, therefore, Judge Hennessy erred by determining that any alleged conflict of interest was irrelevant under the ERISA *de novo* framework.  [ECF No. 51 at 19–20; ECF No. 48 at 27].  Defendant contends that the R&R got it right in that reviewing courts, when applying ERISA *de novo* review of benefits denials, consider alleged conflicts of interest to be irrelevant.  [ECF No. 52 at 12–13].

### i.    Was it Properly Raised?

Objection #5 was properly raised.  The arguments that form its basis were sufficiently raised before Judge Hennessy, [see, e.g., ECF No. 32 at 15–19], and the objection was timely and sufficiently articulated in Plaintiff's R&R objections filing.  [ECF No. 51 at 19–20].

### ii.    Alleged Conflicts of Interest are Irrelevant in the ERISA *De Novo* Framework

For starters, the Court did not locate any binding authority on the question of whether an

---

[13]    After careful consideration of the record, Plaintiff's conflict of interest theory, properly understood, is that although Defendant had allegedly interpreted "working" one way during the first several years of the claim, it developed a financial incentive to deprive Plaintiff of benefits under the Plan such that, "one day, [Defendant] abruptly decided" to deny the claim, "without any material alteration in Mr. DeSilva's circumstances."  [ECF No. 51 at 19–20].

alleged conflict of interest is a relevant factor to consider when applying the ERISA *de novo* lens.[14]

However, at least one other Session of this Court has determined that when ERISA *de novo* lens

is applied, potential and actual conflicts of interest are not a relevant consideration.  <u>See</u>

<u>DiGregorio v. PricewaterhouseCoopers Long Term Disability Plan</u>, No. 03-11191-DPW, 2004

U.S. Dist. LEXIS 15485, at *41 n. 19 (D. Mass. Aug. 9, 2004) (Judge Woodlock reasoning that,

"[b]ecause I conclude that de novo review is appropriate in this case, I need not address

DiGregorio's claim that an arbitrary and capricious standard of review should

include consideration of potential and actual conflicts of interest on the part of Hartford").  This

appears to be the approach taken by several other federal courts.  <u>See, e.g.</u>, <u>Guy v. Sun Life</u>

<u>Assurance Co.</u>, No. 10-CV-12150-DT, 2010 U.S. Dist. LEXIS 135615, at *3 (E.D. Mich. Dec. 22,

2010)  ("If the standard of review is *de novo*, Defendant's decision-making, and its conflict of

interest, becomes irrelevant"); <u>Weidauer v. Broadspire Servs.</u>, No. C-3-07-097, 2008 U.S. Dist.

LEXIS 110537, at *28 (S.D. Ohio Oct. 27, 2008) ("since a plan administrator's decision is

accorded no deference or presumption of correctness when conducting a *de novo* review, whether

there is a conflict of interest in this case is irrelevant").

Judge Hennessy adopted the same view and did not consider the alleged conflict of interest

to be a relevant factor.  [ECF No. 48 at 27].  The undersigned, too, sees no reason to deviate from

this apparently prevailing view.  Indeed, this principle makes good sense since when a reviewing

Court applies an ERISA *de novo* lens, it should place no stock in the motivations of the actual plan

---

[14] Conversely, when a court is applying *abuse of discretion* standard in the ERISA context, whether
there was a conflict of interest is a relevant factor in the analysis.  <u>See, e.g.</u>, <u>Metro. Life Ins. Co.
v. Glenn</u>, 554 U.S. 105, 115 (2008) ("[W]e elucidate what this Court set forth in *Firestone*, namely,
that a conflict should be weighed as a factor in determining whether there is an abuse of
discretion") (citations and internal quotation marks omitted).

administrator, whatever they may be.  <u>See, e.g.</u>, <u>Richards</u>, 592 F.3d at 239 (explaining that courts in this context must "stand in the shoes of the administrator to 'determine . . . whether the administrative decision was correct'" (citations omitted)).  Accordingly, Objection #5 is hereby **<u>OVERRULED</u>.**

## V.    <u>CONCLUSION</u>

For the reasons set forth above, Judge Hennessy's R&R [ECF No. 48], upon R&R *de novo* review of its objected to portions, is hereby **<u>ADOPTED</u>** in its entirety. Defendant's summary judgment motion [ECF No. 25] is **<u>GRANTED</u>**.  Plaintiff's cross-motion for summary judgment is **<u>DENIED</u>**.

**SO ORDERED.**

Dated: March 31, 2025

<u>/s/ Margaret R. Guzman</u>
MARGARET R. GUZMAN
United States District Judge
